# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| VICTORIA ROHN, | ) |
| | ) Civil Action |
| Plaintiff, | ) No._____ |
| | ) |
| v. | ) |
| | ) |
| PRIMARY RESIDENTIAL MORTGAGE, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff brings this action against Primary Residential Mortgage, Inc. for violations of: (1) the Real Estate Settlement Procedures Act 12 U.S.C. § 2601 *et seq.* ("RESPA") and Regulation X 12 C.F.R. § 1024 *et seq.*; and (2) the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA").

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C.A. § 1331 because the Plaintiff's claims arise under RESPA, a federal statute, as well as 28 U.S.C.A. § 1367 for supplemental state and common law claims, which are related to claims in the action within such original jurisdiction and form part of the same case or controversy under Article III of the United States Constitution.

2. This Court has personal jurisdiction over Defendant because it conducts business in Florida making it foreseeable that it would be hauled into a Florida court.

3. Venue is proper because the alleged acts and transactions occurred here, the property at issue is located here, and Defendant transacts and conducts business here.

## PARTIES

4. Defendant is a foreign for-profit corporation with its principal place of business at 1480 North 2200 West Salt Lake City, UT 84116.

5. Plaintiff is a natural person and resident of Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

**The Valid Mortgage and Plaintiff's Payment History**

6.  In 2020, Ms. Rohn refinanced the mortgage on her home, located at 925 36th St. West Palm Beach, FL ("Property"), through a mortgage ("Mortgage") with Defendant.

7.  The refinancing process took around three months, during which Defendant thoroughly reviewed the loan application, all supporting documents, bank statements, credit checks, and public record searches.

8.  The Property underwent two appraisals and an additional survey to account for upgrades and additions.

9.  After this extensive vetting process, Defendant approved the mortgage refinancing for the Property.

10. On September 25, 2020, Ms. Rohn and her then-husband, Charles Rohn, signed the Mortgage in the presence of a licensed notary, William M. Holland, Jr. (Commission No. GG198034), and witness, Arnold Smith. Exhibit A.

11. At all times relevant, Ms. Rohn has timely and fully paid each mortgage payment and has otherwise complied with all terms and conditions under the Mortgage.

12. The Property is the sole residence of Ms. Rohn and her children.

**Defendant's Baseless Fraud Allegations and Refusal to Accept Proof**

13. On or about August 3, 2023, PRMI, through its Executive Vice President and General Counsel Richard J. Armstrong, notified Ms. Rohn that she was in default under the Mortgage for an alleged fraud and misrepresentations in its execution.

14. On or about August 3, 2023, PRMI, through its Executive Vice President and General Counsel Richard J. Armstrong, notified Ms. Rohn that she was in default under the Mortgage for alleged fraud and misrepresentations in its execution.

15. In the letter, Mr. Armstrong stated that PRMI had "clear and convincing evidence" that Mr. Rohn did not sign the Mortgage.

16. But Defendant's "evidence" consisted solely of copies of the loan application, note, and Mortgage, the very documents bearing Mr. Rohn's notarized signature.

17. According to the letter, Ms. Rohn could cure the supposed default by providing "competent evidence" disproving the alleged material misrepresentations or face acceleration of the Mortgage.

18. On or about August 14, 2023, Ms. Rohn responded to the August 3rd letter from Mr. Armstrong.

19. In her response, Ms. Rohn provided Defendant with a letter signed by the notary, William M. Holland, Jr., confirming that on September 25, 2020, Mr. Holland personally witnessed Mr. Rohn sign the Mortgage after verifying Mr. Rohn's identity with his driver's license.

20. Mr. Holland's signed statement was proof that Mr. Rohn had indeed signed the Mortgage and that no fraud had occurred.

21. Defendant ignored this evidence entirely.

22. On or about July 9, 2024, nearly a year after receiving proof that Mr. Rohn had signed the Mortgage, Defendant sent Ms. Rohn an amended acceleration letter claiming different "material misrepresentations" regarding her "employment" at the time of closing.

23. Despite having received irrefutable evidence disproving the signature fraud allegation, Defendant also continued to assert that Mr. Rohn's signature was fraudulent, treated the Mortgage as if it were in default, and failed to take any corrective action to remove the baseless default status.

24. Defendant's baseless threats and accusations continued through January 2025.

25. In January 2025, despite having received proof that disproved the alleged misrepresentations, Defendant issued yet another amended acceleration letter.

26. Unlike the previous letters, this letter declared that Defendant had elected to accelerate the sums due under the Mortgage, refused to accept any further payments from Ms. Rohn, and demanded immediate payment of $90,652.76.

27. The letter further threatened that if Ms. Rohn failed to pay $90,652.76, Defendant would foreclose on her and her children's home.

28. When the January 2025 acceleration letter was sent, Defendant knew it had no legal or factual basis to declare the Mortgage in default, accelerate the debt, or threaten foreclosure.

29. Defendant possessed evidence disproving its own fraud allegations: (1) the notarized Mortgage bearing both Ms. Rohn's and Mr. Rohn's signatures; (2) a written statement from the notary, William M. Holland, Jr., confirming that he personally witnessed Mr. Rohn sign the Mortgage and verified his identity with a valid driver's license; and (3) the undisputed record of Ms. Rohn's timely payments and full compliance with all terms.

30. This evidence left no doubt that the Mortgage was valid, that no fraud had occurred, and that the loan was not in default.

31. Despite this knowledge, Defendant willfully ignored the facts and evidence and continued to assert false claims of fraud, wrongly accelerated the sums owed, and demanded Ms. Rohn pay more than $90,000—conduct that Defendant knew lacked a legal right or justification.

32. Even after providing Defendant with evidence that Mr. Rohn's signature was authentic, Ms. Rohn made repeated efforts to resolve the situation to protect her and her children's home from foreclosure.

33. She responded to Defendant's acceleration letters, unequivocally denying any false or material misrepresentations, and pleading with Defendant to rescind the acceleration.

34. Although she was under no legal obligation to do so, Ms. Rohn took these steps in good faith to eliminate any pretext Defendant might claim for continuing its threats of foreclosure and acceleration.

35. Defendant disregarded these good-faith efforts entirely.

36. Rather than investigating or correcting its error, Defendant persisted in threatening foreclosure, acceleration, and demanding full payment of the mortgage debt, further compounding the harm to Ms. Rohn and her family.

**Defendant's Payment Rejection Scheme and Manufactured Default**

37. Defendant continued to accept Ms. Rohn's full and timely mortgage payments until June 2025, when it abruptly stopped.

38. On June 5, 2025, Ms. Rohn timely and fully submitted her monthly mortgage payment of $816.59 to Defendant.

39. Rather than properly accepting and applying the payment to principal, interest, and escrow—as required by the Mortgage, the Truth in Lending Act, RESPA, and Regulation X—Defendant improperly rejected the payment and returned it to Ms. Rohn.

40. After years of faithfully making every mortgage payment, and even after giving Defendant proof that Mr. Rohn had signed the Mortgage, Ms. Rohn was blindsided when her full, timely payment was rejected.

41. The sudden reversal left her scared, anxious, and bewildered.

42. She became fearful that Defendant would use the rejected payment as a pretext to declare her loan in default or initiate foreclosure proceedings, and she began experiencing sleepless nights and constant anxiety over the stability of her and her children's home.

43. On June 10, 2025, Ms. Rohn again timely and fully remitted her June mortgage payment to Defendant.

44. This time, Defendant accepted the money but failed to properly apply the payment to principal, interest, and escrow as required by the Mortgage, the Truth in Lending Act, RESPA, and Regulation X.

45. Despite accepting the June 2025 payment, on July 2, 2025, Defendant mailed a monthly mortgage statement to Ms. Rohn falsely claiming she was past-due and demanding $816.56 to reinstate her mortgage.

| Explanation of Amount Due | |
|---|---|
| Past Due Payment(s) | $816.56 |
| Late Charges | $0.00 |
| Other Fees and charges | $0.00 |
| **Total Amount Due to Reinstate Loan** | **$816.56** |
| Suspense/Unapplied Balance* | $0.00 |
| Accelerated Amount Due to Pay Off Loan | $88,817.24 |

Please note: The reinstatement and accelerated amounts shown above were acceptable through the as-of date of 07/02/2025. Because additional amounts (such as interest, fees, or attorney fees and costs) may have applied since the as-of date, you must contact us to obtain an updated reinstatement or accelerated amount due.

46. Ms. Rohn was not in fact past due on her Mortgage.

47. On July 2, 2025, despite owing nothing past due, Ms. Rohn tendered $1,666.32 to Defendant, an amount more than sufficient to satisfy any alleged past-due amount and the upcoming August 1, 2025, payment.

48. Defendant again improperly rejected Ms. Rohn's July 2, 2025 payment.

49. On or about July 7, 2025, Defendant sent Ms. Rohn correspondence falsely asserting that it had not received Ms. Rohn's July 1, 2025 payment.

50. The July 7th correspondence threatened Plaintiff with late fees and adverse credit reporting unless the alleged unpaid balance was resolved.

51. The July 7, 2025 correspondence threatened Plaintiff with late fees and adverse credit reporting unless the alleged unpaid balance was resolved.

52. On or about July 16, 2025, Defendant assessed an improper late fee of $21.05 against Ms. Rohn's account, purportedly for her alleged failure to pay her July 2025 mortgage installment.

53. This late fee was improper and without any legitimate basis, as Ms. Rohn had timely satisfied her July payment obligation.

54. Defendant's pattern of rejecting timely payments, misapplying accepted payments, and then falsely claiming Ms. Rohn was delinquent constituted a deliberate scheme to manufacture a default where none existed.

**Defendant's Violations of RESPA After Receiving Notices of Error**

55. On July 31, 2025, Ms. Rohn, through counsel, mailed a detailed written notice of error ("NOE 1") to Defendant at its designated address for receiving such requests.

56. Defendant received NOE 1 on August 4, 2025.

57. NOE 1 identified Ms. Rohn as the borrower, included her mortgage loan account number, and clearly described the specific servicing errors committed by Defendant.

58. NOE 1 specifically invoked Regulation X § 1024.35(b)(1)-(3) and (11), identifying Defendant's failures to properly accept and apply payments and its improper acceleration of the loan.

59. NOE 1 demanded that Defendant immediately correct these errors by: (1) accepting and applying all payments as of the dates originally received; (2) reinstating the mortgage loan to current status; (3) reversing all late fees and default-related charges and actions; (4) reversing the improper acceleration; and (5) removing any negative credit reporting associated with these errors.

60. Defendant did not provide a written response acknowledging receipt of NOE 1.

61. Defendant did not respond substantively within thirty days.

62. PRMI's failure to acknowledge or substantively respond to NOE 1 deepened Ms. Rohn's sense of helplessness, frustration, sleeplessness and anxiety, causing severe emotional distress.

**Defendant's Escalation: False Default Notices and Foreclosure Threats**

63. Rather than correcting its mounting errors, Defendant escalated its wrongful conduct in August 2025 by issuing false notices of default and threatening foreclosure.

64. On or about August 4, 2025, Defendant mailed Ms. Rohn a letter falsely declaring that her loan was in default.

65. The August 4, 2025 letter demanded payment of $1,654.17, which Defendant claimed included payments allegedly due for July 1, 2025 through August 1, 2025, plus the improper $21.05 late fee.

66. Every assertion in the August 4th letter was false.

67. Ms. Rohn owed no past-due payments, as she had timely made all required payments that Defendant had either wrongfully rejected or improperly applied.

68. After the August 4, 2025, letter Defendant has continued sending collection letters demanding payment of amounts it knows are not owed, deliberately perpetuating a false debt to pressure Ms. Rohn into paying money she does not owe.

69. On or about August 11, 2025, Defendant further escalated its misconduct by mailing a Notice of Default and Intent to Accelerate/Foreclose.

70. The August 11, 2025 foreclosure threat letter falsely asserted that Ms. Rohn's account was "seriously past due," when in fact she had never been delinquent and had repeatedly made full and timely payments that Defendant wrongfully rejected or misapplied.

71. The August 11, 2025, letter threatened Ms. Rohn with: (1) foreclosure proceedings against her home based on a default that existed only because of Defendant's own errors; (2) additional late charges, compounding the financial harm from fees she never should have been assessed in the first place; and (3) negative credit reporting, which would damage her creditworthiness and financial reputation for years to come, all based on Defendant's fabricated narrative of delinquency.

72. These letters not only grossly misrepresent Ms. Rohn's payment status but also form the improper basis for Defendant's wrongful acceleration of her loan and its demands for payments that Defendant knew were not owed.

73. On August 20, 2025, Ms. Rohn, through counsel, mailed a second detailed written notice of error ("NOE 2") to Defendant at its designated address for receiving such requests.

74. Defendant received NOE 2 on August 22, 2025.

75. NOE 2 identified Ms. Rohn as the borrower, included her mortgage loan account number, and clearly described the specific servicing errors committed by Defendant.

76. NOE 2 specifically invoked Regulation X § 1024.35(b)(1)-(3), (5), and (11), identifying Defendant's improper assessment of late fees, continued failures to properly process payments, false default claims, and unlawful foreclosure threats.

77. NOE 2 demanded immediate correction by: (1) reversing the improper late fees and all related default charges; (2) reversing the improper acceleration and foreclosure threats; (3) restoring the loan to its proper, current status; and (4) removing all negative credit reporting tied to Defendant's unlawful actions.

78. Despite receiving two detailed Notices of Error documenting a clear pattern of systematic violations, Defendant has failed to respond to the NOEs or correct any of the identified errors.

79. The psychological impact of receiving foreclosure threats based on fabricated defaults has been severe and ongoing, causing Ms. Rohn to experience persistent emotional distress, including fear, anxiety, and insecurity about her home and financial future.

**Harm to Ms. Rohn**

80. The psychological impact of receiving foreclosure threats and demands of payments not owed based on fabricated defaults has been severe and ongoing.

81. Ms. Rohn has suffered persistent emotional distress, including fear, anxiety, and insecurity about her home and financial future.

82. She has experienced sleepless nights, constant worry about damage to her credit and loss of her home, helplessness at being unable to resolve the situation despite her best efforts, humiliation and shame from being falsely branded as delinquent, and psychological trauma from facing foreclosure based on debts she did not owe.

83. Defendant's misconduct has forced Ms. Rohn to waste time and money correcting Defendant's own errors, including preparing and sending a second notice of error after Defendant ignored the first.

84. Ms. Rohn has incurred unnecessary expenses in retaining counsel to dispute Defendant's servicing violations and to compel compliance with the duties imposed by Regulation X.

85. Upon information and belief, Defendant's unlawful and inaccurate debt information has been disseminated to third parties, including credit reporting agencies and other entities that rely on such data, causing further harm to Ms. Rohn's reputation and creditworthiness.

86. Defendant received notice and an opportunity to cure from Ms. Rohn but has failed to do so.

87. All conditions precedent to this action have been satisfied.

### COUNT I AS TO DEFENDANT'S VIOLATION OF RESPA 12 U.S.C. § 2605(g) and REGULATION X § 1024.35

88. Ms. Rohn is a "borrower" under RESPA because she signed the Mortgage and is liable under the Mortgage.

89. At all times relevant, Defendant was a "servicer" as defined in 12 U.S.C. § 2605(i)(2) because it was responsible for servicing Ms. Rohn's mortgage loan, including the collection and management of monthly mortgage payments.

90. The Mortgage is a "federally related mortgage loan" because as it was secured by residential real estate and was secured by a lien on residential property designed for occupancy of one to four families and was made in whole or in part by Defendant, a lender with deposits or accounts insured or regulated by an agency of the federal government.

91. Under Regulation X, 12 C.F.R. § 1024.35, Defendant had specific obligations upon receiving the NOEs related to the Mortgage.

92. After receipt of each NOE, Defendant had five days (excluding legal public holidays, Saturdays, and Sundays) to provide Ms. Rohn a written response acknowledging receipt of the NOE. Regulation X § 1024.35(d).

93. Defendant violated Regulation X § 1024.35(d) because it did not respond to either NOE within (5) days.

94. After receipt of each NOE, Defendant also had (30) days to either: (1) Correct the servicing error identified by Ms. Rohn and provide her with written notification stating the correction made, the effective date of the correction, and contact information, including a telephone number, for further assistance; or (2) Conduct a reasonable investigation into the asserted error and, if determining no error occurred, provide her with a written notice stating Defendant's determination that no error occurred, an explanation of the reasons supporting such determination, notification of Ms. Rohn's right to request copies of the documents relied on by Defendant in reaching its decision, instructions on how she may obtain these documents, and contact information, including a telephone number, for further assistance. Regulation X, 12 C.F.R. § 1024.35(e).

95. Defendant violated Regulation X § 1024.35(i)(C) and Regulation X § 1024.35(e)(1)(i) because it did not respond to either NOE, did not correct the errors identified in each NOE, and did not conduct an investigation, much less a reasonable investigation, into the errors.

96. Defendant's pattern of conduct—ignoring proof of a valid mortgage, rejecting timely payments, fabricating defaults, and then disregarding formal notices of error—establishes a deliberate course of misconduct designed to manufacture grounds for foreclosure and extract money Defendant knows is not owed.

97. As a direct and proximate result of Defendant's violations of Regulation X, Ms. Rohn has suffered significant harm, including: (1) Severe and continuing emotional distress

marked by sleepless nights, anxiety, helplessness, frustration, and constant fear of losing her home despite doing everything right; (2) Time and money wasted correcting Defendant's errors; (3) Unnecessary expenses in retaining counsel to dispute Defendant's servicing violations and compel compliance with Regulation X; (4) Damage to her credit score, creditworthiness, and financial reputation through dissemination of false information to credit reporting agencies and other third parties; (5) Improper late fees and default charges assessed against her account; and (6) Loss of the use of funds wrongfully rejected or misapplied by Defendant.

98. As a result, Defendant is liable to Ms. Rohn for actual damages, statutory damages, and costs and attorneys' fees. 12 U.S.C. § 2605.

### COUNT II AS TO DEFENDANT'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)

99. Ms. Rohn is a "consumer" as defined by Florida Statute § 559.55(8) because she is a natural person allegedly obligated to pay a debt for a mortgage.

100. Defendant is a "person" as defined under the FCCPA because it attempted to collect a debt from Plaintiff.

101. Defendant attempted to collect a "consumer debt" from Ms. Rohn because she was allegedly obligated to pay a debt for personal, family, or household purposes. Fla. Stat. § 559.55(6).

102. The FCCPA prohibits any person from claiming, attempting, or threatening to enforce a debt when such person knows that the debt is not legitimate or asserting rights the person knows do not exist. Fla. Stat. §559.72(9).

103. As detailed above, Ms. Rohn was never in default on her mortgage loan—the Mortgage is valid and she timely made all required payments, which Defendant either wrongfully rejected or improperly applied.

104. Despite knowing that Ms. Rohn was not legitimately in default, Defendant repeatedly claimed that Plaintiff owed past-due amounts, threatened to foreclose, and wrongfully accelerated sums due under the Mortgage.

105. Defendant had actual knowledge that no debt was owed because: (1) it received and held Ms. Rohn's payments; (2) it received proof of valid signatures disproving its fraud allegations; (3) it received two formal Notices of Error documenting its own servicing errors; and (4) its own records showed Ms. Rohn's perfect payment history.

106. The communications described above constituted an attempt to claim debts and enforce rights that Defendant knew were not legitimate.

107. Defendant's threats to enforce these illegitimate debts and assert legal rights to enforce the debts were not mere negligent errors but constituted a pattern of deliberate or reckless conduct undertaken with knowledge that Ms. Rohn did not legitimately owe the amounts claimed.

108. Defendant's conduct was designed to coerce Ms. Rohn into paying money she did not owe by threatening her with foreclosure, credit damage, and loss of her home.

109. As a direct and proximate result of Defendant's violations of Florida Statute § 559.72(9), Ms. Rohn has suffered actual damages, including: Improper late fees and default charges assessed against her account; Loss of time and money spent attempting to resolve Defendant's false claims and servicing errors; Persistent emotional distress including anxiety, helplessness, sleeplessness, and fear of losing her home; Stress and sleeplessness caused by

Defendant's false default claims, demands for payment, and foreclosure threats; Humiliation and shame from being falsely branded as delinquent; Frustration and helplessness at being unable to resolve the situation despite her best efforts; Constant worry about damage to her credit, loss of her home, and financial reputation; and Psychological trauma from facing foreclosure based on debts she did not owe.

110. Because of the above violations of the FCCPA, Defendant is liable to Plaintiff for actual damages, punitive damages, and statutory damages of up to $1,000.00, together with attorney's fees and all costs of Plaintiff's representation.

111. Defendant's conduct was intentional, willful, wanton, and malicious.

112. Because of the above violations of the FCCPA, Defendant is liable to Plaintiff for actual damages, punitive damages, and statutory damages of up to $1,000.00, together with attorney's fees and all costs of Plaintiff's representation. Fla. Stat. § 559.77(2).

113. Plaintiff is also entitled to declaratory and injunctive relief.

## RELIEF REQUESTED

**WHEREFORE**, based on the above stated in this Complaint, Plaintiff respectfully requests this Honorable Court to enter judgment for the Plaintiff and for the following forms of relief:

a) Actual damages;

b) Statutory damages;

c) Punitive damages;

d) Reasonable attorneys' fees and costs;

e) a judgment awarding declaratory and injunctive relief;

f) prejudgment and post judgment interest;

g)  That the Court enter an order that Defendant and its agents, or anyone acting on their behalf, is immediately restrained from altering, deleting or destroying any documents or records; and

h)  Such other and further relief as the Court may deem just and proper.

**Plaintiff respectfully requests a trial by jury on all issues so triable.**

Respectfully submitted,

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946

.